Bob Steele for Appellant GERS Inc. I'd first like to address Atlantic Mutual and the APEX claimant by mail. The district court was correct when they granted motion for summary judgment on the breach of contract cause of action in plaintiff's favor. The plaintiff brought a simple breach of contract action based on the fact that, one, there was no evidence that Atlantic Mutual had paid for the defense that was actually provided by Nixon Peabody, and two, that there was no evidence that Atlantic Mutual had actually provided a defense themselves. The district court erred in granting the motion for reconsideration both legally and factually. First, there was no legal basis for granting the motion. Atlantic Mutual admitted in the papers that they filed with the court that they were simply re-arguing a point that had been raised. Why does that make any difference? Under the federal rules, before the termination of the case, can't the judge revisit any ruling? I believe the court does have discretion to do that, Your Honor. It does that all the time, thinking that maybe evidence should be excluded and later deciding, no, I guess it can come in. Those kinds of changes happen regularly. It is a point that I did want to raise from a legal standpoint, Your Honor, because it contradicts some of the authority coming from this circuit in regards to when a motion of reconsideration can be stated, but it's not the entire basis for the reason that I believe that the court erred in granting that motion either way. I believe it was improper legally, but most importantly, I believe it was improper factually, and that's what I'd like to address now. Are we talking about Rule 54B? I'm sorry, Your Honor? Are we talking about Rule 54B? Specifically, I'm addressing the motion for reconsideration that the court granted as to the motion for summary judgment that had been granted in favor of the court. Okay, but doesn't Rule 54B permit the court, prior to final judgment, to revise even a prior determination made in the case while it's still pending? And I agreed in part to that, Your Honor, and I think that was Judge Graber's point. But whether it was correct for the court to at least take a look or revisit the issue under Rule 54B, in this particular instance, I believe it was incorrect factually, which I'd like to address. Correct. The only point that was raised factually in the motion for reconsideration that caused Judge Burns, in this particular decision, to change his mind, was an email dated April 2, 2001. Could you speak just a little louder, please? Absolutely. It was an email dated April 2, 2001, from Gers' broker to Gers themselves. And the judge found that that may have appeared that the insurance company had provided a defense. And I think the court was wrong for two reasons. Number one, the email itself is confusing at best. It indicated, through the broker, that the insurance company was prepared to provide a defense under the defamation cause of action. Counsel, I don't understand why any of that matters. The court ultimately granted summary judgment to the insurance company on this claim, right? Yes, ultimately. And so we have de novo review of whether that was or was not a correct decision. So looking at the record as a whole, it's our job to figure out if they were entitled to judgment as a matter of law. And on that, my question to you is the following. The potentially covered claim was a claim for defamation. But once the arbitration started, defamation was not an issue in the arbitration. So why didn't the potential for coverage end at the time the arbitration began and the litigation was in a stay mode, and that stay mode never went away because ultimately the case settled? So up until the point of the arbitration, I understand your position. But then at that point forward, I don't understand why there's any potential for coverage because there's no defamation claim going on. Thank you for the question, Your Honor. Two reasons. First, the duty to defend continues until the action is resolved. I thought under California law, the duty to defend ends as soon as the potential for coverage ends. Your Honor, in the Traveler's Decision, which is cited by Judge Burns in his April 1304 ruling, that's at page 3046, excerpts of the record, the Traveler's Case holds that in California, the duty to defend continues until, one, the action is resolved, or the insurer proves to the court through a debt relief action that there's no covered claim, or policy limits are exhausted. Okay, so it couldn't be number one or number three, but number two in your list is essentially what I was saying. That is, when it's clear that there's no coverage, I guess that's a question about California law, and I hope the other side will address it as well. It was my understanding that if a point in time, if there's potential coverage, but for any of a number of reasons it becomes clear that there no longer is any potential coverage that the duty to defend would go away. Now, that may be wrong, but that's what I'm asking you. Am I wrong about California law? I think the court is wrong in California law, Your Honor. Okay. And also, point two would not apply here because the insurer is actually required to file a lawsuit for declaratory relief, getting a resolution in their favor that there is no coverage, which we know did not happen. There's no evidence of that in the record. And under number three, which is the policy limits for a duty to defend or exhaustive, there's no evidence of that. Yeah, no, I understand that. The only, here, the issue is whether or not the action was resolved, and we know based on the record that the action is not resolved until January 2003. But the part that was potentially covered was dormant, completely dormant. There was a stay of the litigation part, and the part that went to arbitration didn't have any defamation in it. So defamation is just kind of out of the picture up until the time of the settlement. If I can answer that question with this hypothetical, let's assume that the insurance company was defending the insured for the entire action like they were required to in January 2002. Let's assume that the plaintiff's attorney told the insurance company counsel at that point in time, you know, I've decided I'm not going to pursue the defamation count at this point in time in the arbitration, which are the facts here. Under that factual scenario, could the insurance company have said to the insured within a week of the arbitration starting, we're done, our duty is no longer here because the defamation count is not being pursued in the arbitration? The answer to that is absolutely not. First and foremost, although the plaintiff's attorney told them that they weren't going to pursue the defamation count, they did not follow that up with a dismissal of the defamation claim in the federal court action that was pending. No, but it never went anywhere. I mean, it was stayed, and it never got unstayed. It never became live again, ever. We know that now looking back, Your Honor. As of January 2002, when the attorney for the plaintiff made that contention, we took him at his word, of course, at that point in time, but there's nothing preventing him from going forward or changing his mind because he didn't follow that up with a dismissal. There's also nothing preventing him of using the arbitration as a discovery tool to find out more information on the defamation claim. I've seen attorneys change their mind in arbitration, change their theory of recovery. There's nothing that could have prevented him doing that in this particular case to the insurer's detriment, and we don't know the detail. Now we can look back and we can say, well, in hindsight, we're not aware of any information that came out during the course of the actual arbitration, not pre-arbitration discovery, but in the actual arbitration, we're not aware of anything that actually came out, but we didn't know that in January 2002, Your Honor, and in January 2002, when the insurance company had a duty to defend the entire action, they could not have washed their hands if the attorney for the claimant just simply said, well, today we're going to not pursue that because the duty to defend is not an on-off switch. You can't turn it off one day and say we're not going to pursue this, I'm going to pursue something else, and that's why the law is that it must stay and that it is not terminated until the action is resolved, and during that entire time frame, there was a duty to defend. Now another hypothetical, Your Honor, is let's say, as we know now, that nothing happened during the actual arbitration. That does not stop the insurance company's duty to remain abreast of the status of the litigation, to participate if there are settlement discussions to try and resolve the case with or without the defamation claim, and there is no evidence that they did anything during that period to try and stay abreast of the litigation, or that they're communicating with the insurer to let the insurer know what the possibilities are. So there's other preliminary or ancillary things that are part of the duty to defend that simply did not occur. For that reason, we would request that the court reverse the summary judgment that was granted where the district court parsed the duty to defend into these different time capsules. If I could spend some time on the federal case. First, I want to stress this is a $65,000 top-of-the-line E&O policy that GERS was buying from federal. The district court erred in granting summary judgment because there were material issues of fact as to whether or not federal had waived or was stopped from claiming that the Klingman or Rogers claims were in fact made before the policy's inception. Well, there's no question that they were made before the policy's inception. Isn't that correct? The waiver is a separate issue, but in terms of the fact, the Klingman claim was made in December of 99 and Rogers in the fall of 99. Your Honor, I do have some factual issues with that because, of course, that all boils down to what's the definition of a claim. There certainly was no litigation. There certainly was no arbitration. So the question is whether or not the facts as to the dispute or the discussion between the insurer and his clients rose to a level of a claim as defined by the policy. Well, Klingman demanded return of the money, right? There certainly was discussions regarding wanting a refund for the portion. And with respect to the other party, there was a mediation. There wasn't an arbitration, but there was a mediation in the fall of 99. Correct. Okay. Correct. Under what possible definition would that not constitute the making of a claim? Well, I don't want to – that's not one of my strong solemn pursuits in this particular case, Your Honor, but I do have some questions in regards to how the claim is defined, the use of the terms for a claim in the policy. But I don't want to – Well, the district court granted summary judgment on alternative bases, some of which involved more esoteric discussions of retroactivity and definitions. But one alternative basis was the simple basis that these were claims actually made before the policy start date,  and I guess I look at things a little bit simplistically and in a linear way in this area, and it may be that I'm not as familiar with it as you are, but it seemed to me that that alternative ground was well-supported because of this demand and the mediation. And would be – would come into play, of course, differently, as Justice said, if, in fact, there is an issue of waiver, if there are triable issues of fact of waiver in regards to the disclosure of facts leading to both of these situations before the insured even purchased the policy. What's your showing on waiver? Substantial. There are a number of disclosures in the two separate applications on E&O. Customers asked for refunds in the past years – in the past three years due to problems. The GERS was responsible for delays. Customers withheld payments due to contract disputes. Complaint logs were maintained by the company indefinitely. All of this information was part of the two E&O applications, which are part of the excerpts of the record. In response to getting that information, Federal asked for information on three arbitrations, which we supplied, and they asked for information on the customers that withheld payments. We then offered to meet with the company to discuss any of the details that they wanted in regards to this information on withholding payments. We also invited them to meet with us to discuss their other issues. What did they do to tell you that they would give you coverage before the start date of the policy? Because waiver isn't what you gave them, but waiver is their decision communicated to you that they would cover things that the policy otherwise said they wouldn't cover. I mean, it's questionable whether you can waive into coverage anyway, but a claim made before the start of the policy isn't within the policy. So what did they do to bring those pre-existing claims into the policy? Well, most importantly, Your Honor, this is a situation where the only information that we got from Federal was marketing materials regarding the unrivaled breadth of coverage here. But Federal refused to, did not meet with us in our invitation to explain their policy in regards to what covered and what is not. Well, but I don't understand how there's any ambiguity about the start date of the policy. It becomes effective on date X. That's never been in question. And I don't dispute that. Okay, and so things that happened before that date X, which I now forget, I guess I don't understand what ambiguity there is there. I don't think ambiguity is the question here when we're discussing waiver, Your Honor. Here we have a company, Willie Taylor, the underwriter, admitted they never meet with the insured, they never go over complaint logs. This is a top-of-the-line policy. If they would have taken the time to meet with the insured, to explain to the insured, especially in their business of customized software installations, that a bug is an unresolved conflict or an unresolved dispute that could potentially lead to a claim and is therefore not covered by the policy, is this insured then going to buy a $65,000 policy that effectively provides no coverage? And I'm not over-dramatizing that when I say that. Their adjusters in the record took the position that a bug is an unresolved dispute that leads potentially to a claim and is therefore not covered. If the insured knew before the policy inception that everything they did up to that date was not going to be covered, I think there would be some serious issues in regards to the insured wanting to buy that policy. Thank you, Counselor. Your time has expired. Thank you, Your Honor.  Good morning. May it please the Court. I'm Gary Selvin, and I represent Atlantic Insurance Company. We're going to split the time equally. Thank you, Counsel. I think Judge Graber hit it right on the head when she said that the arbitration did not include any claims for potentially covered damages. Yeah, except what I'm not sure about, that's factually true, but what I'm not sure about is what that means under California law, whether the potential that it could come back again since it was only stayed and not dismissed meant that it continued? That's the easy answer. If the Court looks at Club Aquarius, Club Aquarius is 113 Calap 3rd 243, that's the end of the inquiry. The Court can also look at Montrose, which addresses when there's an undisputed fact that there is no potential for indemnity. What's the name of the first case, I'm sorry? California Union v. Club Aquarius. Is that cited in any of the briefs? It is, and it's cited in our brief, and I can tell you what page if the Court would like. That's okay. Just remind us what it says. Sure. Club Aquarius involved multiple claims for copyright infringement, and during the underlying lawsuit, liability as to those that were potentially covered was determined not to be the case, and then the only ones going forward were undisputably not covered claims. And the Court said once there's a determination that going forward there's no potential for indemnity, the duty to defend evaporates. Now what makes it even more clear in this case is we don't have one single action. We have two actions. We have a federal court action, and we have an arbitration proceeding. It starts as one proceeding, so everyone acknowledges the duty to defend a mixed claim exists at the beginning before there is, by GERS, a motion to dismiss or to stay. And the motion to dismiss or stay is brought because of a 1994 sales and license agreement entered into between Apex and GERS. So as of that point in time, we know that the federal court action is stayed because those claims that relate to the sales agreement going forward are going to be in an arbitration, in a separate proceeding, indeed as is defined in the policy. So presumably there remained a duty to defend the federal court action if it came back to life. Precisely, which is what the Court addressed in the underlying case here. And the docket and all of the evidence and the attorney bills from the defense lawyer for GERS all showed it never came back to life, and that's why. How is it typically invoked? Is it coming upon the insured to file another demand or what? How does this work? Suppose, in fact, something does develop at the end of the line. Let's take the situation here that instead of the defamation count in the federal court action going away, that the arbitration award was handed down by the arbitrator, it was reduced to a judgment, and then the plaintiff comes back into court and says, okay, I would like to lift the stay. There would be an obligation at that point in time for the insured seeking the benefits under the policy to say I have a potentially covered claim for damages, which is now proceeding. I wish to invoke the terms of the policy and obtain a defense from you, insurance company. But they did that at the beginning, right? They never did that. Well, let's take the chronological sequence. At the beginning, before the arbitration issue came up, they tendered the claim. Right, and defamation was in the case. Then the federal court stays that part of the case. You should have defended at least up until that point. And Atlantic Mutual did. If the court looks at the record, there's a difficult dilemma for GERS. GERS is saying they breached the duty to defend. Well, Atlantic Mutual hired a lawyer and paid about $100,000, retained experts, and defended the case. So either A, they discharged their duty under the policy by defending, or B, they defended, but there was never a duty to defend because the defamation case was dead in its tracks pending the stay by the court. In that case, there couldn't have been a breach, and under California law, in MV Transportation, if there's never a duty to defend, you can't breach the duty to defend. And their argument has to be one or the other. Either we breached the duty to defend because there was an obligation to defend the arbitration case, which this court recognizes never existed, or we breached the duty to defend because the federal court action went forward, which we know factually wasn't the case because the record says it was stayed up until the time that it was dismissed. The only issues that the federal court ever addressed was issues surrounding the judgment from the uncovered arbitration. Even GERS' own brief recognizes that the arbitration did not include the defamation claim. So if the standard on the duty to defend is that there must be a suit potentially seeking damages for defamation, the arbitration is a suit as defined, and it did not potentially seek damages for defamation. The only duty to defend was with regard to the federal court case, and counsel has described it as parsing up points in time. It's really not. It's looking at two separate lawsuits. One is a lawsuit for defamation. One is a lawsuit for breach of contract and fraud, and indeed I think this court would not be troubled at all. If the plaintiff had filed two separate lawsuits, one for the breach of the 1994 sales and licensing agreement, and a separate for the defamation cause of action, this court would have no trouble concluding there was no duty to defend the sales and license contract fraud case, only a duty to defend the defamation case. In this case, that's what you had was two separate cases. It just took a court order following a motion by Gers to take those two cases and properly carve them into two cases. I'll be pleased to answer any other questions that the court may have, but I'd like to make sure that Mr. Newton has sufficient time. No further questions? Good morning, Your Honor. If it may please the Court, Steve Newton on behalf of Respondent Federal Insurance Company. With respect to the appeal of Gers against my client, the district court decision on summary judgment had two essential bases for that decision, which are separate and distinct, and we believe that both of those were well-founded and those decisions are sound. The first one, while technical, nevertheless is decisive, and that is the fact that Gers has not appealed to this court the finding of the court and entry of the order pertaining to the fact that these claims as to Rogers and Klingman were in fact made prior to the inception date of this policy. And because they have not appealed that, it is not in their brief, and we've pointed that out in our responding brief, the only issues before the court in terms of their appeal against my client, Federal, deal with the second or alternative basis that the judge gave for the reason to grant the summary judgment motion, which dealt with the limitation provisions that are contained in the policy whereby if an insured has knowledge of a circumstance that could reasonably give rise to a claim prior to the inception date of the policy, there's no coverage in that event either. Is that the waiver issue? Which is the waiver issue as between the two you've indicated? His waiver argument really goes to that second component because the policy is very clear and the court found that those claims were made prior to the inception date of the policy, and so you can't waive something that just never existed, which would have been coverage. Well, he suggests there's a question of fact here, and that is that the claim may not have been made prior to the policy but timely. And he's obviously asking for the case to be sent back so that those facts can be explored and decided by a fact finder. Your Honor, I'd like to point out that on oral argument, the attorney foregoers conceded to the court that the Rogers claim was made prior to the inception date of the policy. He agreed that certain things happened, and the question is whether those constitute the making of a claim. That's what I understood his argument to be, that a demand was made by, I'm getting them mixed up, Klingman made a demand and Rogers entered into a mediation, and so I understood him to agree that those things happened but that they don't necessarily constitute claims having been made prior to the effective date. Your Honor, I don't think that is correct. I really don't. I think that the district court entered the order on summary judgment on the clear and express basis that those claims were made. Well, are they claims? That's the question. Are those claims? Yes, and she found that they were, in fact, claims, that they were, in fact, made Rogers in May of 1999, which was conceded at oral argument, and then also in the Klingman matter that it was a claim, in fact, made against Rogers in December of 1999, and that they were claims. But this is a motion for summary judgment. This was a grant of summary judgment. So to the extent that she made a finding that there was a claim, arguably that's a genuine issue of material fact. Well, Your Honor, I don't see how it could be a genuine issue of material fact when the matter was briefed and there was no argument by them that, in fact, claims were made prior to the inception date of this policy. And, in fact, with respect to one of them, they conceded that the claim was made prior to the inception date of the policy. The order issues granting the motion on that basis, which is a separate and distinct basis from the other reason, and when Gers takes its appeal to this court, it doesn't touch that basis of her order, which formed the basis for the judgment. There is no appeal pending before the Ninth Circuit on the fact that there is no coverage under this policy due to the fact that these claims were made prior to the inception date of this policy. The policy has replete with places where it clearly says this is claims made coverage. There's only coverage for you if a claim, in fact, is made for the first time during the term of the policy itself. And this policy incepted in October of 2000. These claims were all made in December of 1999, and the court said, well, this is pretty much a no-brainer because there's no argument that the claims were made. In fact, you concede that one of them was made, but in the opposition papers, nothing was raised with respect to the Clingman claim in December of 1999. There's nothing there. You can look, but there's nothing there, and that's one basis she gave. The other basis was that there was the limitation provisions in the grant of coverage which says that the insured has reason to believe that there's a circumstance that could give rise to a claim, which is an objective standard, which does permit an insured to move for summary judgment. In other words, the court, because it says reasonably believe, it's not subjective. It's objective, and under the case law, it permits the judge sitting on summary judgment to make that determination, which she did also because of all the volume of correspondence that existed prior to the inception date of the policy, whereby Gers was in trouble with both of these customers, with both Rogers and Clingman. There was a multitude of documents to that effect, and I think that that's where his waiver argument is scheduled or directed, but it certainly can't be directed at the first issue because you can't waive something that never existed. There were no coverage for these claims because they were made prior to the inception date of the policy. On the issue of whether in fact there were... Is there a logical explanation for why the insurer asked for all of this information? Your Honor, when it came, Gers' policy was expiring with Atlantic Mutual quickly. There was an emergency, well, I'm going to call it an emergency. There was a fax sent by Gers' professional broker who was representing them to a number of insurance companies, one of which was my client, saying we've got a policy that's expiring with Atlantic Mutual very soon. We would like to get a quote from you, and this is in the record. And a federal was asked to quote it, and they did, based upon the application that was sent to them. They asked for further information. It was provided to them, and then they said, okay, we will quote to you, and in that quote letter, which is in the record of ER 1567, it was very clear that they raised the material terms of the policy, and on the binder that was issued, which is ER 1549 through 1558, again they set forth all the material components of the policy, including the fact that it was a retroactive date involved in it. And it's a bit disingenuous for Gers' to seriously suggest they didn't understand what they were going to get in the federal policy when they had the same type of coverage, that is claims made, in the Atlantic Mutual policy, which existed well before it and had for several years. I mean, they knew precisely what the coverage was that they were getting from federal. And, I mean, it's a cornerstone of claims made coverage. You only get coverage for claims that are first made during the term of the policy. That is the cornerstone, that which makes the insurance a little bit cheaper than it would otherwise be, because there's no latency. You don't have to worry about claims that would be made afterward in some way, shape, or form, or claims that are made before. It has to be made during that policy term. And this is not a new feature of the insurance world. Claims made policies have been around for many, many years. And what it does is it preserves one of the inherent features of claims made insurance, which is protection against unknown or contingent events, which is in the insurance code, California Insurance Code, Section 22, so that you are only providing coverage for the claims that are made during that policy term, as opposed to other types of coverage, which are occurrence-based, which are much broader in nature. But the record was very clear with Judge Gonzales that the claims were first made. They were conceded to be first made outright in Rogers. And then, secondly, in Klingman, there was no opposition given to demonstrate that they would not be a claim under any reasonable standard, which is the primary reason. And even if the court were to throw out or agree with Gers on what it did appeal, the judgment still stands because they didn't appeal the primary focus of her decision. And we would request the court to give us our judgment on that case. Thank you, counsel. The case just argued will be submitted for decision, and the court will adjourn.
judges: O'scannlain, Graber, Gibson